Danielle Khanna

Plaintiff,

V.

TransUnion LLC.,

Defendant.

Civil Action No.

JURY TRIAL DEMANDED

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Danielle Khanna ("Ms. Khanna" or "Plaintiff"), and for her Complaint against the Defendant, TransUnion, LLC ("TransUnion"), states as follows:

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory, and punitive damages, costs, and attorneys' fees brought by Plaintiff Danielle Khanna against TransUnion for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

2. TransUnion has systematically violated the FCRA by (a) reporting mathematically impossible Highest Balance figures that exceed the stated Credit Limit across multiple tradelines in Plaintiff's consumer credit file; (b) failing to maintain and follow reasonable procedures to ensure maximum possible accuracy of the information it reports about Plaintiff; (c) failing to conduct a reasonable reinvestigation upon Plaintiff's written

dispute; and (d) failing to clearly and accurately disclose all information in Plaintiff's file upon her written request as required by 15 U.S.C. § 1681g(a)(1).

## JURISDICTION AND VENUE

3. Jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, which provides that any action under the FCRA may be brought in any appropriate United States district court.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law, specifically the FCRA.

5. Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this district, a substantial part of the events or omissions giving rise to the claims occurred in this district, and TransUnion regularly conducts business in this district.

## PARTIES

6. Plaintiff Danielle Khanna is a natural person residing in Maynard, Middlesex County, Massachusetts. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

7. Defendant TransUnion, LLC is a Delaware limited liability company with its principal place of business at 555 West Adams Street, Chicago, Illinois 60661. TransUnion is registered to do business in the Commonwealth of Massachusetts and regularly conducts business herein.

8. TransUnion is a nationwide Consumer Reporting Agency ("CRA") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, and/or on a cooperative nonprofit basis, it regularly engages in whole or in part in the practice of assembling or evaluating

consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically the mail and the internet. As a CRA, TransUnion is aware of and subject to its obligations under the FCRA.

## FACTUAL ALLEGATIONS

### A. Plaintiff's April 2026 Consumer Disclosure

9.     On or about April 1, 2026, Plaintiff requested and obtained a copy of her consumer credit disclosure from TransUnion through www.annualcreditreport.com. The disclosure was assigned File Number 431715467 and bears a Credit Report Date of April 1, 2026.

10.    Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Plaintiff's request, TransUnion was required to "clearly and accurately" disclose to Plaintiff all information in her file at the time of the request.

11.    Upon review of the April 1, 2026 consumer disclosure, Plaintiff identified multiple material inaccuracies in the tradeline data that TransUnion has been reporting and disseminating to third parties, including prospective creditors who have made hard inquiries into Plaintiff's consumer file.

### B. Third-Party Dissemination and Article III Standing

12.    TransUnion has disseminated Plaintiff's inaccurate consumer report to third-party creditors and prospective creditors, as confirmed by the hard inquiry log appearing in Plaintiff's April 1, 2026 consumer disclosure, which reflects inquiries from SoFi Bank

National Association (March 31, 2026), Institution for Savings (March 31, 2026), and Capital One (December 9, 2025).

13. Because Plaintiff's inaccurate consumer report has been disseminated to third parties in connection with credit transactions, Plaintiff has suffered a concrete injury in fact sufficient to confer Article III standing under *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).

14. The failure of a statutory entity to provide accurate, truthful information as required by law creates an injury-in-fact that satisfies Article III. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) (alleged injury to plaintiff's statutorily created right to truthful information was a cognizable injury in and of itself, regardless of whether plaintiff actually hoped to reside in the defendant's housing complex); therefore "the Art. III requirement of injury in fact was satisfied."

**C. Bank of America Charge-Off Account**

**Inaccurate and Frozen Delinquency Reporting**

15. Plaintiff's TransUnion consumer disclosure reflects a Bank of America credit card account, Account Number 426452577369****, opened January 19, 2017, with a Date Closed of December 17, 2022, and a Pay Status of "Charge-off."

16. TransUnion's consumer disclosure reflects that the last payment Plaintiff made on this account was August 26, 2019. Notwithstanding this, the payment history grid in Plaintiff's consumer disclosure reflects an "OK" rating for every month from May 2019 through October 2022 a span of over three years with no balance, no past-due amount, and no actual payment data, only coded check marks indicating current status.

17. Beginning in November 2022, the payment history reflects a 30-day late rating, escalating to 60 days in December 2022, 90 days in January 2023, and 120+ days in February and March 2023, before showing C/O (Charge-Off) status every month from May 2023 through March 2026.

18. From October 2023 forward, the account reports a balance of $17 as past due each month, accompanied by remark code "CBG/>PRL<" in every reporting cycle from October 2023 through March 2026 a frozen, static balance that has not changed by a single dollar across more than 17 consecutive months of reporting.

19. A genuinely accurate payment history on a charged-off account would reflect the actual fluctuating balance and payment context for each period. The frozen $17 balance reported as "past due" without any reduction, adjustment, or contextual payment data for 17+ consecutive months presents an internally contradictory and materially misleading tradeline to any prospective creditor reviewing Plaintiff's report.

### D. Capital One Account — Highest Balance Exceeds Credit Limit

20. Plaintiff's TransUnion consumer disclosure reflects a Capital One credit card account, Account Number 414709755390****, opened April 15, 2022, with a current balance of $206 and a Pay Status of "Current Account."

21. TransUnion's disclosure reflects a High Balance (Hist.) of $11,524 from October 2023 through March 2026 against a Credit Limit (Hist.) of $10,000 for the same period.

22. A Highest Balance of $11,524 exceeding a Credit Limit of $10,000 by $1,524 is a mathematical impossibility on a standard revolving credit card account. Credit limits define the maximum amount a cardholder is permitted to borrow; a balance exceeding the credit limit would require the creditor to have authorized overlimit charges. At no time

(d)     Barclays Bank Delaware (00028116144****), opened January 19, 2017, closed March 8, 2018: High Balance of $7,408 against a Credit Limit of $500 — the reported Highest Balance exceeds the stated Credit Limit by $6,908, or nearly fifteen times the limit.

(e)     Barclays Bank Delaware (00024763974****), opened August 30, 2015, closed October 28, 2016: High Balance of $5,027 against a Credit Limit of $500 the reported Highest Balance exceeds the stated Credit Limit by $4,527, or more than ten times the limit.

(f)     Wells Fargo Card Services (530997101377****), opened October 21, 2021, currently open: High Balance (Hist.) of $1,352 against a Credit Limit (Hist.) of $1,000 (as reported for February through March 2026) the reported Highest Balance exceeds the current stated Credit Limit by $352.

25.     At no time did Plaintiff incur overlimit charges or authorize charges in excess of the stated credit limit on any of the foregoing accounts. TransUnion's reporting of Highest Balance figures exceeding the stated Credit Limits on each of these tradelines therefore misrepresents Plaintiff's actual account history and presents a materially misleading picture of Plaintiff's creditworthiness to prospective creditors reviewing her report.

26.     The pattern of these errors across seven tradelines spanning multiple creditors, account types, and time periods demonstrates a systemic data processing failure within TransUnion's consumer credit database. On information and belief, TransUnion's automated systems have incorrectly populated, mapped, or calculated High Balance fields against Credit Limit fields, resulting in the dissemination of inaccurate data to every third party that has accessed Plaintiff's consumer report.

27.     The accuracy of a consumer's credit report has direct, material consequences on creditworthiness assessments made by lenders, insurers, and landlords. A tradeline reporting a Highest Balance

did Plaintiff incur overlimit charges or authorize charges in excess of the stated credit limit on this account. TransUnion's reporting of a Highest Balance exceeding the Credit Limit therefore misrepresents Plaintiff's actual account history and presents a materially misleading picture of Plaintiff's creditworthiness to prospective creditors reviewing the report.

23. This discrepancy is particularly significant because the Capital One account appears in Plaintiff's report as a "Flexible Spending Credit Card" a charge-style account with no preset spending limit — yet TransUnion assigns it a fixed Credit Limit of $10,000 and simultaneously reports a High Balance exceeding that limit, creating a false and derogatory impression that Plaintiff routinely exceeded her credit limit.

**E. Multiple Tradelines — Systemic High Balance / Credit Limit Inaccuracies**

24. In addition to the Capital One account, Plaintiff's TransUnion consumer disclosure reflects mathematically impossible High Balance figures exceeding stated Credit Limits across multiple additional tradelines:

(a) American Express (349992139054****), opened June 30, 2010, closed December 12, 2023: High Balance (Hist.) of $20,659 against a Credit Limit (Hist.) of $5,000 — the reported Highest Balance exceeds the stated Credit Limit by $15,659, or more than four times the limit.

(b) American Express (349992424686****), opened February 2, 2017, closed May 29, 2018: High Balance of $2,770 against a Credit Limit of $500 — the reported Highest Balance exceeds the stated Credit Limit by $2,270, or more than five times the limit.

(c) American Express (349992294133****), opened December 3, 2015, closed March 9, 2017: High Balance of $6,262 against a Credit Limit of $1,200 — the reported Highest Balance exceeds the stated Credit Limit by $5,062, or more than five times the limit.

following Plaintiff's written dispute, despite the mathematical impossibility of those figures on their face, constitutes at minimum a reckless disregard for its reinvestigation obligations under the FCRA. Under *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 57 (2007), reckless disregard of a known or obvious risk satisfies the willfulness standard under 15 U.S.C. § 1681n.

## G. Damages

33.   As a direct and proximate result of TransUnion's violations of the FCRA, Plaintiff has suffered actual damages, including but not limited to: (a) damage to her credit reputation and creditworthiness; (b) emotional distress, frustration, humiliation, and loss of sleep resulting from the presence of inaccurate information on her consumer report; and (c) expenditure of time and resources to identify and attempt to correct the inaccuracies.

34.   Specifically, as a result of the inaccurate information TransUnion has disseminated in Plaintiff's consumer reports, Plaintiff has been unable to qualify for credit on favorable terms, has suffered damage to her reputation with prospective creditors who have accessed her file, and has experienced ongoing emotional distress and loss of sleep.

35.   The inaccuracies identified herein are not trivial. A consumer credit report that reflects seven tradelines with Highest Balances exceeding stated Credit Limits in some cases by factors of ten to fifteen times the limit presents a deeply distorted portrait of financial irresponsibility to every prospective creditor, insurer, or landlord who reviews the report. The harm to Plaintiff's credit reputation is ongoing and continuing.

# COUNT I

## Violation of 15 U.S.C. § 1681e(b)

**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

36.  Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

37.  15 U.S.C. § 1681e(b) requires that, whenever a CRA prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

38.  TransUnion violated 15 U.S.C. § 1681e(b) by preparing and furnishing consumer reports concerning Plaintiff to third parties that contained materially inaccurate information, specifically: (a) Highest Balance figures exceeding the stated Credit Limit across seven separate tradelines, including inaccuracies as extreme as a reported High Balance of $7,408 against a Credit Limit of $500 on the Barclays Bank Delaware account ending 4144; (b) a frozen, static charge-off balance of $17 reported as past due for 17+ consecutive months on the Bank of America account without any change or contextual payment data; and (c) internally contradictory payment history data on the Bank of America account reflecting three years of "OK" ratings during a period when no actual payments were recorded.

39.  The existence of mathematically impossible High Balance figures exceeding Credit Limits across seven tradelines spanning multiple creditors is not the result of isolated data error. It reflects TransUnion's failure to maintain reasonable quality control procedures to detect and correct obvious numerical impossibilities before including them in consumer reports disseminated to third parties.

40.  A reasonable quality assurance procedure would have flagged any tradeline in which the

that exceeds the Credit Limit signals to any reviewing creditor that the consumer habitually exceeded her credit limits, which lenders treat as a significant indicator of financial irresponsibility and elevated default risk.

**F. Plaintiff's Pre-Suit Dispute and TransUnion's Failure to Reinvestigate**

28.    Approximately three to four months prior to the filing of this Complaint, Plaintiff sent a written dispute to TransUnion via certified mail, identifying with specificity the inaccurate tradelines described herein, including the mathematically impossible High Balance figures exceeding stated Credit Limits, the frozen charge-off balance on the Bank of America account, and the internally contradictory payment history data.

29.    Plaintiff's written dispute letter notified TransUnion of each of the specific inaccuracies and requested that TransUnion conduct a reasonable reinvestigation and correct or delete the inaccurate information.

30.    Pursuant to 15 U.S.C. § 1681i(a)(1)(A), upon receipt of a consumer's written dispute regarding the completeness or accuracy of any item of information contained in her file, TransUnion was required to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate, and to record the current status of the disputed information, or delete the item from Plaintiff's file, within thirty (30) days of receipt of the dispute.

31.    Despite receipt of Plaintiff's written dispute, TransUnion either failed to conduct a reasonable reinvestigation within the thirty-day statutory period, failed to correct the identified inaccuracies, or continued to report the same inaccurate information without adequate investigation, in violation of 15 U.S.C. § 1681i.

32.    TransUnion's failure to correct the High Balance and Credit Limit discrepancies

reported Highest Balance exceeded the stated Credit Limit as per se requiring human review, given that such a figure is, by definition, either inaccurate or requires explanatory context. TransUnion's automated systems failed to perform this basic check.

41. TransUnion's conduct was willful within the meaning of 15 U.S.C. § 1681n. TransUnion is a sophisticated consumer reporting agency that has processed millions of consumer credit files and has been subject to extensive regulatory oversight and private litigation under the FCRA. It is either aware or should be aware that High Balance figures exceeding Credit Limits constitute per se inaccuracies that damage the consumer. Its continued dissemination of such figures across Plaintiff's file constitutes at minimum a reckless disregard of its obligations under the FCRA. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007).

42. In the alternative, TransUnion's conduct was negligent within the meaning of 15 U.S.C. § 1681o, in that TransUnion failed to maintain and follow reasonable procedures to ensure the maximum possible accuracy of the information contained in Plaintiff's consumer report.

43. As a direct and proximate result of TransUnion's violations of 15 U.S.C. § 1681e(b), Plaintiff has suffered actual damages as described herein, and is entitled to statutory damages, punitive damages, costs, and attorneys' fees pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II

## Violation of 15 U.S.C. § 1681i

### Failure to Conduct Reasonable Reinvestigation Upon Dispute

44. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

45. 15 U.S.C. § 1681i(a)(1)(A) requires that, upon receiving a notice of dispute from a consumer regarding the completeness or accuracy of any item of information contained in the consumer's file, a CRA shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item, before the end of the thirty-day period beginning on the date on which the agency receives the dispute.

46. TransUnion violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation within thirty days of receiving Plaintiff's written dispute, or, alternatively, by conducting a purported reinvestigation that failed to correct the identified inaccuracies notwithstanding the mathematical impossibility of the High Balance figures relative to the stated Credit Limits.

47. A reasonable reinvestigation of Plaintiff's dispute would have, at minimum, required TransUnion to query each affected data furnisher to verify whether the reported Highest Balance actually exceeded the furnisher's own records of the account's credit limit — a comparison that could have been performed within minutes using automated systems. TransUnion either failed to perform this query, or performed it and disregarded the result.

48. On information and belief, TransUnion's reinvestigation process relies primarily or exclusively on the transmission of Automated Consumer Dispute Verifications ("ACDVs") through the e-OSCAR system to data furnishers, without any independent

review of whether the furnisher's response addresses the specific nature of the inaccuracy identified by the consumer. Courts have recognized that a rubber-stamp verification through e-OSCAR, without independent analysis of the consumer's specific dispute, does not constitute a "reasonable" reinvestigation under the FCRA.

49. TransUnion's conduct was willful within the meaning of 15 U.S.C. § 1681n, in that TransUnion either knowingly disregarded Plaintiff's dispute or recklessly failed to conduct any meaningful investigation of a dispute that identified, on its face, mathematically impossible data. In the alternative, TransUnion's conduct was negligent within the meaning of 15 U.S.C. § 1681o.

50. As a direct and proximate result of TransUnion's violations of 15 U.S.C. § 1681i, Plaintiff has suffered actual damages as described herein, and is entitled to statutory damages, punitive damages, costs, and attorneys' fees pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT III

## Violation of 15 U.S.C. § 1681g(a)(1)

**Failure to Clearly and Accurately Disclose All File Information**

51. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

52. 15 U.S.C. § 1681g(a)(1) requires that, upon a consumer's written request, a CRA shall clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request.

53. TransUnion violated 15 U.S.C. § 1681g(a)(1) by providing Plaintiff with a consumer disclosure that presented High Balance figures for multiple tradelines that mathematically

cannot be accurate specifically, seven tradelines in which the reported Highest Balance exceeds the stated Credit Limit. A disclosure that contains internal mathematical impossibilities is not a "clear and accurate" disclosure of the information in Plaintiff's file.

54.    As the FTC's Advisory Opinion to Darcy (June 30, 2000) recognized, a CRA that always scrambles or truncates account or other data does not technically comply with Section 609 of the FCRA because it does not provide "accurate" (and perhaps not "clear") disclosure of all information in the file. The same logic applies with full force to a CRA that discloses account data containing internal mathematical contradictions the consumer cannot meaningfully verify, identify, or dispute information that is internally impossible on its face.

55.    The failure to disclose accurate and internally consistent account data deprives Plaintiff of her statutory right to understand the contents of her own credit file, evaluate the accuracy of each tradeline, and meaningfully exercise her dispute rights under the FCRA. Without accurate High Balance and Credit Limit data, Plaintiff is reduced to, at best, guessing as to what information TransUnion is actually reporting to third parties and, at worst, being unable to identify the specific inaccuracy with sufficient particularity to trigger a furnisher's reinvestigation obligations.

56.    TransUnion's conduct was willful within the meaning of 15 U.S.C. § 1681n, or in the alternative negligent within the meaning of 15 U.S.C. § 1681o.

57.    As a direct and proximate result of TransUnion's violations of 15 U.S.C. § 1681g(a)(1), Plaintiff has suffered actual damages as described herein, and is entitled to statutory damages, punitive damages, costs, and attorneys' fees pursuant to 15 U.S.C. §§ 1681n and 1681o.

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Danielle Khanna respectfully requests that this Honorable Court enter judgment in her favor and against TransUnion, LLC, and award the following relief:

a.    Actual damages in an amount to be proven at trial, pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1);

b.    Statutory damages of not less than $100 and not more than $1,000 per violation, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

c.    Punitive damages in an amount to be determined by the trier of fact, pursuant to 15 U.S.C. § 1681n(a)(2), for TransUnion's willful noncompliance with the FCRA;

d.    Reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

e.    An injunction requiring TransUnion to correct all inaccurate High Balance and Credit Limit data in Plaintiff's consumer file and to maintain reasonable procedures to prevent the recurrence of such inaccuracies; and

f.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Danielle Khanna hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

_Danielle Khanna_

Danielle Khanna

10 Apple Ridge, Unit 2

Maynard, MA 01754

Plaintiff, Pro Se

Dated: April 03, 2026

## EXHIBIT

A. TransUnion Consumer Disclosure dated April 1, 2026 (File No. 431715467).

B. FTC Advisory Opinion to Darcy (June 30, 2000).

C. Plaintiff's Pre-Suit Written Dispute Letter to TransUnion.